IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

AMOS BURGER,                                          Case No. 6:14-CV-00112-AC

           Plaintiff,                                 FINDINGS AND
                                                     RECOMMENDATION

      v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

           Defendant.

ACOSTA, Magistrate Judge:

      Amos Burger ("plaintiff") seeks judicial review of a final decision by the Commissioner of

Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act ("Act").   This Court has jurisdiction to review the

Commissioner's decision pursuant to 42 U.S.C. § 405(g).   Based on a careful review of the record,

the Commissioner's decision should be reversed and this case should be remanded for further

proceedings.

Page 1 - FINDINGS AND RECOMMENDATION

### *Procedural Background*

Plaintiff applied for DIB on September 1, 2010, alleging disability as of March 10, 2008, due to an injury sustained while serving in the United States Coast Guard, which resulted in chronic pain and depression. (Tr. 11, 175-78, 192.) His application was denied initially and upon reconsideration. (Tr. 116-19, 121-23.) A hearing was held on August 22, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 31-81.) On September 14, 2012, the ALJ issued a decision finding plaintiff not disabled. (Tr. 11-25.) Plaintiff timely requested review of the ALJ's decision and, after the Appeals Council denied his request for review, plaintiff filed a complaint in this Court.[1] (Tr. 1-3.)

### *Factual Background*

Born on October 6, 1982, plaintiff was 25 years old on the alleged onset date of disability and 29 years old at the time of the hearing. (Tr. 24, 39, 175.) He graduated from high school and received vocational training in law enforcement during his service with the United States Coast Guard. (Tr. 41, 193.) Plaintiff previously worked as a caregiver, coxswain, and law enforcement specialist. (Tr. 41-42, 71, 193, 209.)

### *Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant

---

[1] The record before the Court constitutes more than 900 pages, but with multiple incidences of duplication. Moreover, some evidence was reproduced in a fragmentary fashion. Where evidence occurs in the record more than once, the Court will generally cite to the transcript pages on which that information first appears in its entirety.

Page 2 - FINDINGS AND RECOMMENDATION

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner resolves whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner evaluates whether the claimant's impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R.§ 404.1520(f). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Id.* at 142; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

### *The ALJ's Findings*

At step one of the five-step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 13.) At step two, the ALJ found that plaintiff had the following severe impairments: "chronic shoulder pain (myofascial pain), left ankle pain, plantar fasciitis, right hand carpal tunnel syndrome, depression, and generalized anxiety disorder." (*Id.*) At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. (Tr. 16.)

As such, the ALJ continued the sequential evaluation process to determine how plaintiff's medical limitations affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform "light work as defined in 20 CFR 404.1567(b)" except:

> [he] can occasionally push and pull weights up to seven pounds with his right hand. He cannot lift above waist-level with his right hand. He cannot climb ladders, ropes, or scaffolds. He should avoid all exposure to workplace hazards, such as machinery and heights. He requires a sit-stand option, which includes not sitting or standing for more than 15 minutes before alternating his position for at least five minutes. He is limited to work with no more than occasional interaction with coworkers and the public. He is able to remember and carry out four to five-step instructions.

Page 4 - FINDINGS AND RECOMMENDATION

(Tr. 17.) At step four, the ALJ concluded that plaintiff could not perform his past relevant work. (Tr. 24.) At step five, the ALJ found, based on the testimony of a vocational expert ("VE"), that plaintiff could perform a significant number of jobs existing in the national economy despite his impairments, such as security guard and surveillance system monitor. (Tr. 24-25.) Accordingly, the ALJ determined that plaintiff was not disabled within the meaning of the Act. (Tr. 25.)

## Discussion

Plaintiff argues that the ALJ erred by: (1) improperly assessing medical evidence from Charles Kuttner, M.D., Alexander Gloria, M.D., and Dorothy Anderson, Ph.D., as well as counselor Vince Morrison; (2) rejecting the Veterans Affairs' ("VA") 100% disability rating; (3) finding him not fully credible; (4) disregarding the lay witness statements of his wife, Kristina Burger-Sleulel; and (5) rendering an invalid step five finding. (Pl.'s Opening Br. 11.)

I.    Medical Evidence

Plaintiff first contends that the ALJ failed to provide legally sufficient reasons, supported by substantial evidence, for discrediting the medical opinions of Dr. Kuttner, Dr. Gloria, Dr. Anderson, and Mr. Morrison.[2]

A.    Acceptable Medical Sources

There are three types of acceptable medical opinions in Social Security cases: those from

---

[2] Plaintiff also asserts that the ALJ wrongfully rejected the opinion of Alec Denes, M.D., in relation to his "restriction to no repetitive movements with the right shoulder." (Pl.'s Opening Br. 14.) To the contrary, the Court finds that the ALJ adequately translated Dr. Denes's report into concrete functional limitations in the RFC. The ALJ restricted plaintiff to occasional pushing and pulling, and no lifting above waist-level with the right hand. (Tr. 17); *see also Brown v. Colvin*, Case No. 3:13-CV-01832-HZ, 2014 WL 6388540, *3-4 (D. Or. Nov. 13, 2014) ("[t]he ALJ reasonably resolved that limiting [the claimant] to occasional overhead reaching, pushing, and pulling was sufficient to account for Dr. Brett's restriction to no heavy exertion or repetition with the upper extremities").

treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.*

      1.    Dr. Kuttner

Plaintiff began treatment with Dr. Kuttner in June 2009 for counseling and medication management.[3] (Tr. 254-55, 774-806, 809.) In June 2011, Dr. Kuttner wrote a letter stating that he "ha[s] been treating [plaintiff] for a severe, treatment-resistant depression that is . . . most likely secondary to his service-connected shoulder injury and related issues including chronic pain, loss of his planned career, and physical disability." (Tr. 254.) The doctor opined that the combination of these impairments "seemed to be rendering [plaintiff] disabled." (*Id.*) In September 2011, Dr. Kuttner wrote a second disability letter, in which he stated he last saw plaintiff on "8/4/11" and noted that, while "his mood was somewhat better at the time of his most recent visit . . . the combination of his physical and psychiatric issues is impairing him enough that individual unemployability appears to medically probable." (Tr. 255.)

The ALJ gave Dr. Kuttner's opinion "little weight" because it was "not supported by the

---

     [3] Dr. Kuttner is part of a treatment team overseeing plaintiff's physical and psychological conditions. (Tr. 50, 54, 846.) Specifically, from January 2009 through the summer of 2010, plaintiff obtained frequent care from Mr. Morrison and VA provider Julie Adams, P.A. (Tr. 556-89, 806.) From June 2008 through October 2010, he saw physician assistant Susan Ring. (Tr. 742-73.) Additionally, from February 2008 through March 2010, plaintiff's right shoulder pain was treated by Dr. Denes. (Tr. 271-332.) In conjunction therewith, plaintiff was participating in a pain clinic through the Oregon Health and Science University ("OHSU"); his primary contact was Grace Chen, M.D. (Tr. 413-17.) He also underwent physical therapy when he could afford such care. (Tr. 339-40, 343, 746, 865.)

record, including the October 2010 VAMC assessment and his own February 2011 treatment note."
(Tr. 22.) The ALJ may reject a medical opinion that is inconsistent with the doctor's own treatment
notes. *Bayliss*, 427 F.3d at 1216.

An independent review of Dr. Kuttner's longitudinal treatment record evinces that plaintiff
was consistently struggling, even with basic tasks, due to depression and anxiety. (Tr. 254-55,
774-805, 809.) Plaintiff periodically reported some relief from certain medications, however, he still
endorsed a significant level of impairment. (*See, e.g.*, Tr. 786.) In fact, for several years, plaintiff
was unable to find a combination of medications that worked for him. He reported, in October 2010,
that he was "really not doing very well" because he was "[i]rritable" and "in a lot of pain," such that
his "depression seems a lot worse" (Tr. 776), but in February 2011 that he was "feeling better" and
that his "[c]urrent combination [of medications] is [the] best so far," such that he was starting to
increase his daily activities and was optimistic about potentially becoming involved in "law
enforcement dispatching" in the future. (Tr. 809.) Then Dr. Gloria subsequently found upon
examination in April 2011 that plaintiff's anxiety and depression were "significant" despite the use
of numerous medications, "includ[ing] two different forms of benzodiazepines [and] long and short
acting narcotic medications". (Tr. 868.)[4]

Moreover, the October 2010 VA exam does not support the ALJ's finding, especially when
considered with record as a whole. Peter Natsios, M.D., performed a one-time evaluation of plaintiff
to determine whether he could obtain medications from the VA but still receive care from his
existing treatment team. (Tr. 846-49.) Dr. Natsios did not assess plaintiff's functional capacities

---

[4] Despite the fact that he continued to regularly treat plaintiff, the record before the Court
does not contain chart notes from Dr. Kuttner post-dating February 2011. (Tr. 810, 865-70.)

or ability to work, however, he did diagnose him with "[m]ajor depressive disorder, recurrent." (Tr. 848.) While plaintiff indicated to Dr. Natsios that "his treatment with Dr. Kuttner has largely been successful," he nonetheless continued to report problems with pain, sleep, "depression, anger, mood swings and preoccupation." (Tr. 847.) In other words, plaintiff's level of functioning, as reported to Dr. Natsios in October 2010, was consistent with Dr. Kuttner's coterminous chart note.

Therefore, the ALJ's determination that Dr. Kuttner's opinion was contravened by the other medical evidence of record is not supported by substantial evidence. Essentially, the ALJ ignored eighteen months of treatment records from Dr. Kuttner, as well as evidence from several other treating and examining sources indicating an analogous level of impairment, and instead relied on an isolated chart note and one-time exam that was not demonstrative of plaintiff's functioning. The ALJ's decision should be reversed in this regard.

### 2.   Dr. Gloria

In April 2011, plaintiff commenced care with Dr. Gloria "to address his chronic pain issues," while still undergoing psychiatric treatment with Dr. Kuttner. (Tr. 256, 865-70.) In September 2011, Dr. Gloria wrote a letter describing plaintiff's impairments – i.e., shoulder pain that is "only 40% improve[d] with long acting opiate therapy," "depression and bipolar disorder," and "other chronic pain issues" – and remarking that "it [is] doubtful that he could currently maintain full-time gainful employment." (Tr. 256.)

The ALJ afforded "limited weight" to Dr. Gloria's opinion because his treatment notes did "not include objective medical evidence that supports the level of limitation that he proposes" and "his opinion is not supported by the longitudinal record." (Tr. 22.)

As noted above, the longitudinal record is congruous with Dr. Gloria's assessment. In fact,

Page 8 - FINDINGS AND RECOMMENDATION

nearly every treating provider opined that plaintiff was unable to work on a full-time, sustained basis.[5] (*See* Tr. 254-55 (Dr. Kuttner), 256 (Dr. Gloria), 389 and 563 (Ms. Adams), 806-08 (Mr. Morrison.)  Furthermore, while an ALJ may reject a treating physician's opinion if it is "brief, conclusory, and inadequately supported by clinical findings," the Commissioner does not assert, and the court does not find, this rule to be applicable here. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); Def.'s Resp. Br. 10.  Significantly, Dr. Gloria's disability letter is neither brief nor conclusory, and it does make reference to objective findings.  (Tr. 256.)  Namely, the doctor cites to plaintiff's "rotator cuff [surgeries] in October 2008 and again in 2009," which resulted in a "30% [disability] rat[ing]" by the VA, as well as plaintiff's "depression and bipolar disorder," for which "[h]e has ongoing care under a psychiatrist Dr. Charles Kuttner" and "is rated at 50% in regards to his service related disabilities." (*Id.*) He also refers to plaintiff's history of receiving "[c]hronic pain management at OHSU" as the basis of his opinion.  (*Id.*)  In addition, although limited, Dr. Gloria's chart notes reflect that he reviewed plaintiff's "entire coast guard medical chart," performed his own objective examinations, and generated his own clinical observations, which generally indicated that plaintiff was experiencing "a poor quality of life." (Tr. 865-69.)  Accordingly, the ALJ's rejection of Dr. Gloria's opinion should be reversed.

---

[5] The Commissioner asserts that Ms. Adams repeatedly opined that plaintiff "would benefit from working," such that it "was reasonable" for the ALJ to find that plaintiff "was capable of more activity than he alleges." (Def.'s Resp. Br. 13-14 (citations and internal quotations omitted).) The Commissioner mischaracterizes the tone and content of Ms. Adams's chart notes; as a VA provider, she informed plaintiff that he was still on active duty and therefore needed to try performing "desk work only . . . one to two hours two time a week." (Tr. 556-89.) Nonetheless, she explicitly opined in February 2010 that plaintiff was "unable to work or perform any duties, and [is] expected to never be fit for full duty." (Tr. 389.) Moreover, her chart notes consistently reflect, up until the July 2010 discharge date, plaintiff's "poor health with shoulder pain, immobility of right shoulder, and depressed mood." (Tr. 556-89.)

3.    Dr. Anderson

In June 2011, state agency consulting source Dr. Anderson reviewed the record and completed a Psychiatric Review Technique Form ("PRTF").[6] (Tr. 105.) She also completed a corresponding mental RFC assessment, in which she opined that, due to plaintiff's moderate impairment in concentration, persistence, or pace, he was capable of "understand[ing] [and] remember[ing] short (1-2 step) simple tasks, instructions and procedures on [a] routine basis." (Tr. 109.) In other words, Dr. Anderson concluded that plaintiff was "unable to comply [with the] demands of more detailed work on a consistent basis." (*Id.*)

The ALJ afforded Dr. Anderson's opinion "partial weight." (Tr. 21.) However, based on his "observ[ations] and interacti[ons] with [plaintiff] during the hearing," the ALJ determined that plaintiff "is capable of more than one and two-step commands." (*Id.*)

As a preliminary matter, the Commissioner has not cited to, and the Court is not aware of, any authority indicating that an ALJ may permissibly disregard a medical opinion premised on his or her lay observations of the claimant, especially where, as here, that opinion is compatible with the record as a whole. *See* Def.'s Resp. Br. 12 (stating only that "[t]he inclusion of the ALJ's personal observations does not render the ALJ's decision improper" and citing to *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985), which held that an ALJ's observations of specific behavior at the hearing that expressly contravened that claimant's subjective symptom testimony was a sufficient basis to discredit the claimant.) Moreover, the Commissioner's contention that the ALJ's rejection of Dr.

---

[6] Contrary to plaintiff's assertion, and as the Commissioner notes, "limitations identified in the [PRTF] are not a [RFC] assessment." (Def.'s Resp. Br. 13 (citing Tr. 16; SSR 96-8p, *available at* 1996 WL 374184)); *Peck v. Colvin*, Case No. 3:13-CV-02278-AA, 2015 WL 1010530, *10-11 (D. Or. Mar. 4, 2015); *see also* (Tr. 77 (VE testifying that the term "moderate" has no vocational significance).)

Anderson's opinion was proper because "the ALJ accepted the opinion of [Daryl Birney, Ph.D.,]"

is unpersuasive for three reasons. (*Id.*)

First, the ALJ did not cite to or otherwise rely on evidence from Dr. Birney in rejecting Dr.

Anderson's evaluation. (Tr. 21); *see also Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001)

(an administrative decision cannot be affirmed on a ground that the ALJ did not invoke in making

that decision). Second, Dr. Birney performed a one-time examination of plaintiff in March 2011 and

Dr. Anderson expressly considered Dr. Birney's report in formulating her opinion. (Tr. 101, 810-

12.) Third, although Dr. Birney did not formally assess plaintiff's functional capacities, he did

endorse "problems with concentration." (Tr. 811.) As such, the ALJ's determination that plaintiff

could "remember and carry out four to five-step instructions" is not supported by substantial

evidence. The ALJ's assessment of Dr. Anderson's opinion should be reversed.

B.    Non-Acceptable Medical Source

While only "acceptable medical sources" can diagnose and establish that a medical

impairment exists, evidence from "other sources" can be used to determine the severity of an

impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513. "Other sources"

include, but are not limited to, counselors. *Id.*; SSR 06-03p, *available at* 2006 WL 2329939. To

disregard the opinion of a non-acceptable medical source, the ALJ must provide a germane reason.

*Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010).

Plaintiff began care with Mr. Morrison in January 2009 and sought counseling therefrom one

to two times per week "until late summer 2010, whe[n] he was unable to continue because of a

discharge from USCG and loss of healthcare." (Tr. 562, 806-08.) In February 2011, Mr. Morrison

opined that plaintiff was "unable to function in the workplace because of depression and anxiety and

general impairment brought by chronic pain." (Tr. 806-07; *see also* Tr. 451 (letter from Mr. Morrison, dated August 2009, describing plaintiff's treatment and combined physical and mental impairments).) In so opining, Mr. Morrison referred to his clinical observations, as well as his objective findings, plaintiff's symptomology, and plaintiff's treatment regime. (Tr. 806-08.)

The ALJ neglected to discuss Mr. Morrison's assessment, beyond noting that "a statement from a social worker [described plaintiff] at times appearing unkempt, unshaven, and exhausted." (Tr. 20.) As plaintiff's treating mental health counselor, Mr. Morrison's opinion constituted relevant and probative evidence that the ALJ was required to discuss. *See Vincent v. Heckler*, 739 F.3d 1393, 1395 (9th Cir. 1984) (the ALJ must explain the rejection of all relevant and probative evidence). Indeed, Mr. Morrison was significantly involved with plaintiff's treatment; he provided weekly counseling to plaintiff for more than a year-and-a-half and was frequently coordinating care with other providers, including Dr. Kuttner and Ms. Adams. (Tr. 562, 565-66, 569, 571, 806-08, 811.) The ALJ erred by failing to meaningfully consider or afford any weight to Mr. Morrison's opinion.

II.    VA Disability Rating

Plaintiff next asserts that the ALJ erred in rejecting the VA's determination that he is entitled to receive total disability compensation. The ALJ "must ordinarily give great weight to a VA determination of disability." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Less weight may be afforded to such a determination only by providing "persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

The VA initially assessed plaintiff with a partial service-connected disability rating in July 2011, but deferred a finding of unemployability at that time. (Tr. 876-86.) In October 2011, plaintiff's rating was adjusted to reflect the consideration of additional medical evidence; his current

Page 12 - FINDINGS AND RECOMMENDATION

VA determination is 90% overall disability, based predominantly on his depression and right

shoulder impairments. (Tr. 892-97.) Despite plaintiff's 90% disability determination, he receives

benefits at the 100% rate because he is deemed unemployable by the VA due to his

service-connected disabilities. (Tr. 889.)

The ALJ's entire discussion of the VA's service-connected disability rating is as follows:

> [A]lthough not a determinative factor in deciding [plaintiff's] disability herein, I note
> that the VA has found [plaintiff] to be 100% disabled. However, the VA did not
> review the record that is before me. More importantly, the VA and the Social
> Security Administration define the term "disability" differently. Accordingly,
> [plaintiff's] VA disability rating is informational, but it is not persuasive evidence
> that he is incapable of performing work consistent with the [RFC].

(Tr. 23.) Thus, the sole reason furnished by the ALJ for affording less weight to the VA's disability

determination was that it was not based on the same evidence, as the fact that "VA and the Social

Security Administration define the term 'disability' differently" is merely an observation. (*Compare*

Tr. 23. *with McCartey*, 298 F.3d at 1076.)

The VA evaluated records from Dr. Kuttner, Dr. Gloria, Dr. Chen, physical therapists, and

the VA treatment providers, as well as statements from plaintiff and his wife, in formulating his

disability rating. (Tr. 877-78, 893.) The VA also evaluated a large amount of other records. (*Id.*)

The only evidence before this court that may not have been reviewed by the VA are the reports of

the state agency consulting sources and the one-time evaluations performed by Dr. Birney and Steven

Vander Waal, M.D. (Tr. 82-113, 810-12, 814-15.) While Drs. Birney and Vander Waal did not

offer any meaningful opinion as to plaintiff's ability to work,[7] their diagnoses are largely consistent

---

[7] Dr. Vander Waal opined that plaintiff experienced "no restrictions in his ability to hear, speak, travel or handle objects at waist level," although "[h]e is unable to lift objects with his right hand." (Tr. 815.) However, plaintiff does not allege disability based on an inability to hear, speak, travel, or handle. There is also no indication that Dr. Vander Waal assessed plaintiff's

with those provided by Drs. Kuttner and Gloria. (Tr. 812, 815.) Moreover, as discussed above, the ALJ improperly rejected functional limitations assessed by Dr. Anderson, whose opinion took into account the reports of Dr. Birney and Dr. Vander Waal. (Tr. 100-01, 105-10.)

In sum, there is no meaningful distinction between the record used by the VA and the ALJ in assessing plaintiff's alleged disability. The ALJ's determination to the contrary therefore was not based on substantial evidence, especially in light of the fact that, as addressed in Section I, plaintiff's treating, examining, and non-examining doctors opined that he was more limited than reflected in the ALJ's RFC. The ALJ's rejection of the VA's disability rating should be reversed.

III.    Plaintiff's Credibility

Plaintiff argues that the ALJ failed to provide a clear and convincing reasons, supported by substantial evidence, for rejecting his subjective symptom testimony concerning the severity of his impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to

---

lifting abilities and, in any event, plaintiff testified at the hearing that he can lift objects with his right hand, such that it is unclear where or how this restriction originated. (Tr. 61-62, 814-17.) Accordingly, the ALJ properly found that Dr. Vander Waal's "opinion 'statement' is of little value in assessing [plaintiff's RFC]." (Tr. 23.)

Page 14 - FINDINGS AND RECOMMENDATION

conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).  If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citation omitted).

At the hearing, plaintiff testified that he was unable to work primarily as a result of his March 2008 on-the-job injury, which caused "chronic pain" in his right shoulder and "depression [and] anxiety . . . secondary to that injury." (Tr. 46.)  He also endorsed a "lack of sleep" due to his chronic pain, making it "really hard to function."  (Tr. 47.)  Plaintiff stated that he took a number of medications to treat his conditions, including gabapentin, fentanyl patches, lamictal, valium, lorazepam, topamax, and adderall, which placed his symptoms "more under control than it has been." (Tr. 48-49, 52.)  However, he explained that "it took years to get to where [he is] now and [he turned] about every stone there is to try [in the process]." (Tr. 52.)  According to plaintiff, these medications cause side-effects, such as "[f]atigue, confusion, [and] overall cloudiness," which are exacerbated by his "lack of sleep." (*Id.*)  As for activities of daily living, plaintiff remarked that he can read, watch television, use a computer, cook, and do laundry and dishes.  (Tr. 56-57.)  He nonetheless reported that these activities caused pain, such that, while he "attempts to do those things," they often go uncompleted or are performed in short intervals.  (Tr. 57-63.)

After summarizing his hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but his statements regarding the extent of these symptoms were not fully credible due to his activities of daily living and the lack of corroborating medical evidence. (Tr. 18-21.)  Notably, the ALJ found that plaintiff's subjective symptom testimony was undermined by his activities of daily living.  (Tr.

Page 15 - FINDINGS AND RECOMMENDATION

20-21.)  Daily activities may be used to discredit a claimant where they are either "transferable to a work setting" or "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (citations omitted).  The ALJ observed that plaintiff cooked, shopped for groceries, paid bills online, and listed reading, watching television, and spending time with his children as hobbies.  (Tr. 20-21.)  The ALJ also denoted that plaintiff: "had no problems with self-care, other than washing his left side and difficulty pulling items over his head"; "tr[ied] to do as much as [his] shoulder and depression [allowed] [r]egarding household chores"; drove locally, except "he does not like to drive when he is on his medication"; and "play[ed] videogames when [his] carpal tunnel isn't too bad." (*Id.* (internal quotations omitted).)  In addition, the ALJ cited to Dr. Kuttner's February 2011 chart note reflecting plaintiff's report of increased shoulder pain after attempting to help his father lay hardwood floors.  (Tr. 20.)

The aforementioned recitation of the evidence is deficient in two respects.  *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and, thus, did not support an adverse credibility finding).  First, it improperly restates the nature of plaintiff's testimony; he did not indicate that he was wholly unable to perform all tasks.  Rather, plaintiff explained that he "attempted" to conduct normal daily activities but was unable to do so on a sustained basis without disruption from his physical and mental symptoms.  (Tr. 57-63); *see also Wentzek v. Colvin*, Case No. 3:12-CV-01687-SI, 2013 WL 4742993, *6-7 (D. Or. Sept. 3, 2013) (reversing the ALJ's credibility finding under analogous circumstances).  Second, the ALJ's determination ignores the fact that, at least through February 2011, plaintiff was essentially non-functional.  The record demonstrates that he did not regain the ability to assist with household chores until September 2010.

Page 16 - FINDINGS AND RECOMMENDATION

(Tr. 746; *see also* Tr. 200-08, 217-24 (plaintiff's and his wife's Adult Function Report and Third-Party Adult Function Report, respectively, both dated November 2010, which the ALJ used as the source of plaintiff's daily activities.)  Further, plaintiff's depression and anxiety, especially in conjunction with his substantial medication regime, caused extreme disruptions in his mood and ability to focus.  (*See, e.g.*, Tr. 254-56, 556-89, 774-808.)  Thus, the fact that plaintiff may have experienced medical improvement after February 2011 to the point where he felt able to assist his father in laying flooring, does not resolve whether he was disabled within the meaning of the Act for the preceding three-year period.

The ALJ also found that plaintiff's subjective complaints were not supported by the medical record.  (Tr. 18-20.)  "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  As discussed at length above, the ALJ misconstrued the medical record in myriad respects.  For instance, the ALJ reported that plaintiff sought mental health counseling from Dr. Kuttner only every two months, which "is very persuasive evidence that [his] mental impairments were not so severe as to be disabling."  (Tr. 20.)  Yet, as summarized in Section I, plaintiff's care was managed by a treatment team that entailed frequent medical visits, including counseling one to two times per week with Mr. Morrison.  Similarly, the ALJ cited to Dr. Denes's May 2009 work release "as further persuasive evidence that he is capable of more activity than he alleges."  (Tr. 22.)  Dr. Denes was plaintiff's surgeon; while he physically released plaintiff to modified work in May 2009, he continued to note through March 2010, when he terminated care due to the lack of further surgical options, plaintiff's "severe chronic disabling pain," which was likely

related to his underlying mental conditions. (Tr. 271, 276-78.)

In sum, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for finding plaintiff not credible. This error was harmful, such that the ALJ's credibility finding should be reversed.

IV.    Lay Witness Testimony

Plaintiff also contends that the ALJ neglected to provide a germane reason to reject the lay testimony of Ms. Burger-Sleulel. Lay testimony regarding a claimant's symptoms or how an impairment affects a claimant's ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

In November 2011, Ms. Burger-Sleulel filled out a Third-Party Adult Function Report in support of plaintiff's claim. (Tr. 200-08.) Ms. Burger-Sleulel indicated that plaintiff was "physically . . . very limited" and could not sleep due to "constant pain," the combination of which made him "extremely depressed." (Tr. 200.) She stated that he had a "hard time remembering anything" as a result of "all the medications he is on." (Tr. 202.) Ms. Burger-Sleulel also stated that she has to help him bathe and dress "sometimes." (*Id.*) As for household chores, she reported that plaintiff helps with "laundry, dishes, [and] garbage when [he is] capable", but can engage in such tasks for only "20-30 min[utes] at a time." (Tr. 203.) Moreover, Ms. Burger-Sleulel remarked that plaintiff shops and drives infrequently, and "forgets to pay bills and needs . . . help with balancing the check books and accounts." (Tr. 204.) She generally described plaintiff as "withdrawn[,] depressed and angry" because "he feels he has let his family down." (Tr. 205-07.)

The ALJ first denoted that Ms. Burger-Sleulel's "observations are generally consistent with

Page 18 - FINDINGS AND RECOMMENDATION

[plaintiff's] allegations." (Tr. 23.) The ALJ then found her "statement to be generally credible" in "light of the longitudinal record." (*Id.*) In other words, the ALJ determined that, "even if one accepts these allegations as completely true, they do not describe symptoms or limitations so severe as to preclude [plaintiff] working at jobs consistent with the [RFC]." (*Id.*) As such, the ALJ did not wholly discredit the lay witness testimony. Nevertheless, plaintiff is correct that because not all of the limitations described by Ms. Burger-Sleulel are reflected in the RFC, the ALJ rejected some of her statements without explicitly providing a reason for doing so.

As explained in Section III, the ALJ neglected to provide a clear and convincing reason, supported by substantial evidence, to reject plaintiff's credibility. Thus, the failure to provide a germane reason to disregard certain portions of Ms. Burger-Sleulel's third-party testimony was not harmless error. *See Molina*, 674 F.3d at 1114-22 ("an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims"). The ALJ's evaluation of the lay witness testimony should be reversed.

V.    Step Five Finding

Lastly, plaintiff argues that the ALJ erred at step five because his RFC and, by extension, the hypothetical question posed to the VE, did not account for all of his limitations. Plaintiff also argues that the ALJ neglected to "identify any transferable skills from [his] past work" pursuant to SSR 82-41 in finding that he could "perform the semiskilled occupation of security guard at step five." (Pl.'s Opening Br. 19-20.) As discussed herein, the ALJ improperly rejected plaintiff's and Ms. Burger-Sleulel's testimony, as well as the medical opinions of Dr. Kuttner, Dr. Gloria, Dr. Anderson, and Mr. Morrison. Therefore, plaintiff is correct that the ALJ's step five finding was not supported

by substantial evidence. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE). As a result, the court declines to address plaintiff's second contention of error in relation to the ALJ's step five finding, and instead focuses on the appropriate remedy.

The decision "whether to remand the case for additional evidence or simply to award benefits is within the discretion of the court." *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) (citation omitted). The court, however, may not award benefits "unless the claimant is, in fact, disabled." *Id.* (citation omitted). Conversely, a remand for further proceedings is proper where outstanding issues remain unresolved. *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003).

Although the ALJ committed multiple reversible errors, the court finds that further administrative proceedings are appropriate because several outstanding issues remain. For example, the nature of plaintiff's functional limitations from February 2011 to present need clarification. While Drs. Kuttner and Gloria authored disability letters in September 2011, there is no direct medical evidence documenting plaintiff's functioning after May 2011. Further, there is some indication in the record that plaintiff's symptoms partially abated after February 2011. For example, prior to 2011, plaintiff attended a variety of medical appointments; the fact that he ceased such intensive treatment, combined with his most recent statements to Dr. Kuttner of enhanced

functioning and mood, could be a sign of stability or improvement. Any disability finding must first account for these ambiguities in the record. In other words, even crediting the improperly rejected evidence as true does not resolve whether plaintiff retained the ability to engage in sustained work at some point after the alleged onset date. *See Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (the "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision).

On remand, the ALJ should reassess plaintiff's alleged impairments and reevaluate the medical evidence, including the VA's 100% disability rating. Further, the ALJ should consult a medical expert to review the record in order to determine if and/or when plaintiff's disabling symptoms receded and whether a closed period of disability is warranted. If necessary, the ALJ should then reformulate the RFC and perform the subsequent steps of the sequential evaluation process.

### *Recommendation*

For the reasons stated above, the Commissioner's decision should be REVERSED and this case should be REMANDED for further proceedings.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the

objections are filed.  Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 26th day of March 2015.

JOHN V. ACOSTA
United States Magistrate Judge